**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

**LOREN MITCHELL**
**MAGISTRATE IN CHANCERY**

**LEONARD L. WILLIAMS JUSTICE CENTER**
**500 NORTH KING STREET, SUITE 11400**
**WILMINGTON, DE 19801-3734**

Date Submitted: February 3, 2026
Date Decided: April 22, 2026

Samuel T. Hirzel, II, Esquire
Elizabeth A. DeFelice, Esquire
Catherine E. Lynch, Esquire
Heyman Enerio Gattuso & Hirzel LLP
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

Mathew W. Murphy, Esquire
Kaitlyn R. Zavatsky, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Re:   *Mikhail Gorodetskiy v. Honeywell International Inc.*,
        C.A. No. 2025-1085-LM

Dear Counsel:

This letter resolves the pending motion for default judgment, motion to dismiss, and motion for summary judgment. At the heart of these motions, is whether the Plaintiff, Mikhail Gorodetskiy, is entitled to advancement of legal expenses under the Certificate of Incorporation. For reasons further explained in this letter, I find the Plaintiff failed to satisfy the contractual prerequisites governing such claims and is therefore not entitled to advancement of legal expenses. Defendant's motion to dismiss is, therefore, granted. Plaintiff's motions for summary judgment and default judgment are denied, and Plaintiff is not entitled to fees-on-fees. This is my final report.

## I.  FACTUAL BACKGROUND

Mikhail Gorodetskiy ("Plaintiff") is the former Chief Executive Officer ("CEO") of LLC UOP or OOO UOP (hereinafter "LLC UOP"), which is an indirect Russian subsidiary affiliated with Honeywell International Inc. ("Defendant").[1] Plaintiff served in that role for several years and continued to act as CEO through mid-2022.[2]  In February and March of 2022, following Russia's invasion of Ukraine, Defendant suspended and ultimately wound down its business operations in Russia, including those of LLC UOP.[3]  LLC UOP was dropped from email correspondence and removed from Defendant's corporate intranet and all other internal systems.[4] Plaintiff's employment formally ended in June 2022.[5]

Before his departure, Plaintiff sought clarity on Defendant's indemnification policies.[6]   Defendant responded by issuing a letter confirming that its indemnification policies would continue to apply to Plaintiff even after his

---

[1]  Docket Item ("D.I.") 1 ¶ 2.

[2]  D.I. 1 ¶ 2.

[3]  D.I. 1 ¶ 18;  D.I. 15 at 2.

[4]  D.I. 1 ¶ 18.

[5]  D.I. 1 ¶ 2.

[6]  D.I. 1 ¶ 6;  D.I. 15 at 2.

employment ceased (the "Letter of Indemnity").[7]  The Letter of Indemnity explained that those rights arise under Article Eleventh of Defendant's Certificate of Incorporation, which governs indemnification and advancement and sets forth the procedures by which an indemnitee may seek advancement of expenses.[8]

Due to Defendant's cessation of its business operations in Russia and LLC UOP's removal from Defendant's internal system, LLC UOP was left unable to fulfill its contractual obligations, leading to significant liabilities.[9]  In August 2023, a Russian commercial court declared LLC UOP insolvent and appointed Anna Alekseevna Logacheva ("Logacheva" or the "Insolvency Administrator") as the insolvency administrator, who then initiated proceedings against Plaintiff.[10]  The Insolvency Administrator brought various claims against Plaintiff as a result of his former position as CEO of LLC UOP (these claims are henceforth referred to as the "Insolvency Action").[11]

---

[7]  D.I. 1 ¶ 1;  D.I. 15 at 2;  D.I. 1, Ex. B.

[8]  *See* D.I. 1, Ex. A., art. Eleventh.

[9]  D.I. 1 ¶¶ 1, 18;  D.I. 15 at 2.

[10]  D.I. 1 ¶¶ 3, 19.

[11]  D.I. 1 ¶¶ 3, 20.

The first claim of the Insolvency Action sought the production of documents and information from Plaintiff related to LLC UOP and remains pending.[12] A second claim sought to invalidate compensation paid to Plaintiff from March to June 2022, before his termination as CEO and LLC UOP's insolvency.[13] This claim was dismissed and is no longer subject to further proceedings.[14] A third claim challenged the validity of an extension of a loan agreement involving Defendant and LLC UOP that Logacheva claims may have contributed to LLC UOP's insolvency, and likewise remains unresolved.[15] The Insolvency Administrator also indicated the possibility of pursuing additional claims against Plaintiff based on theories of secondary liability under Russian law tied to the subsidiary's unsatisfied debts.[16]

In addition to the Insolvency Action, Plaintiff became involved in separate proceedings initiated by Russian customs authorities concerning documentation related to LLC UOP's operations (the "Customs Inquiries").[17] The Customs Inquiries, issued in early 2025, sought information relating to technical

---

[12] D.I. 1 ¶ 20.

[13] D.I. 1 ¶ 21.

[14] *Id.*

[15] D.I. 1 ¶ 22.

[16] D.I. 1 ¶ 23.

[17] D.I. 1 ¶ 24.

documentation imported into Russia by LLC UOP.[18] Plaintiff responded to the Customs Inquiries to the best of his recollection but asserted that he no longer possessed responsive materials because company records had been transferred following his departure from LLC UOP.[19]

Plaintiff incurred legal expenses for these matters and sought to invoke his contractual right to advancement.[20]

## A.     The Demand

On February 11, 2025, Plaintiff sent Defendant a written demand requesting advancement and indemnification for expenses associated with the Russian proceedings (the "Demand Letter").[21] The Demand Letter did not include an executed undertaking and did not expressly commit to repay any advanced amounts,

---

[18] *Id.*

[19] *Id.*

[20] D.I. 1 ¶ 36;  D.I. 15 at 5.

[21] D.I. 1 ¶¶ 36–37;  D.I. 15 at 5;  *see* D.I. 1, Ex. C.

as contemplated by the undertaking requirement in the governing instrument.[22]  The

Defendant did not advance funds in response to that demand.[23]

## B.      Procedural Posture

Plaintiff initiated this action on September 24, 2025, seeking advancement of

expenses and related relief.[24]   After the action was filed, the parties conferred

regarding the claims and the governing contractual requirements.[25]   Defendant

raised, among other issues, that Plaintiff had not complied with the procedural

prerequisites set forth in Article Eleventh for making a valid advancement demand,

including the requirement that an undertaking be provided.[26]  Plaintiff submitted the

undertaking to the Court on October 14, 2025.[27]

---

[22]  D.I. 1 ¶¶ 36–37;  D.I. 15 at 5;  *see* D.I. 1, Ex. C; D.I. 1, Ex. A., art. Eleventh § (2)(A) ". . . *provided however*, that . . . an advancement of expenses incurred by an indemnitee in his or her capacity as a Director . . . in advance of the final disposition of a proceeding, shall be made only upon delivery to the corporation of an undertaking . . . to repay all amounts so advanced if it shall ultimately be determined by final judicial decision . . . that such indemnitee is not entitled to be indemnified for such expenses . . . ") (emphasis in original).

[23]  D.I. 1 ¶ 39;  D.I. 15 at 6;  D.I. 8 at 2 (Defendant argues that Plaintiff had still failed to make a valid advancement demand on October 10, 2025, and thus had not made an advancement pursuant to the demand by that date.).

[24]  *See* D.I. 1.

[25]  D.I. 15 at 8.

[26]  D.I. 15 at 8;  D.I. 8 at 2.

[27]  D.I. 9, Ex. 1.

On October 15, 2025, Defendant moved to dismiss the Complaint.[28] Defendant questioned the scope and clarity of Plaintiff's demand, including whether it properly distinguished between advancement and indemnification and adequately identified the underlying proceedings.[29] Defendant also asserted that the contractual twenty-day waiting period had not been satisfied because, in its view, that period does not begin to run until a valid demand is submitted.[30]

Plaintiff thereafter moved for summary judgment and default judgment.[31]

## II.    ANALYSIS

### 1.    Plaintiff's Motion for Default Judgment

Under Court of Chancery Rule 55(b), default judgment may be entered where a party "has failed to appear, plead or otherwise defend as provided by these Rules . . . " against a claim for affirmative relief.[32]  A defendant's obligation to respond is governed by Rule 12, which permits a party to file either an answer or a motion responsive to the complaint within the applicable time period.[33]  Moving to dismiss

---

[28]  *See* D.I. 10.

[29]  D.I. 15 at 8–9.

[30]  D.I. 15 at 9.

[31]  *See* D.I. 14.

[32]  Ct. Ch. R. 55(b).

[33]  *See* Ct. Ch. R. 12.

may satisfy the requirement of Rule 55(b) without an answer being filed if it does not put the moving party at a severe tactical advantage because of the non-moving party's willful or conscious disregard for the Court's rules.[34]

Default judgment is an extreme remedy and is granted sparingly.[35] "Judgment by default is . . . the extreme remedy and generally speaking the Rule has been interpreted to require 'some element of willfulness or conscious disregard of the order' before such a sanction is imposed . . . ."[36]

Plaintiff seeks entry of default judgment asserting Defendant failed to respond to the Complaint.[37] The record here does not support this application. Defendant timely moved to dismiss in response to the Complaint and participated in the litigation process.[38] Defendant also engaged in motion practice contemplated by the Court's scheduling order, which permitted its dismissal arguments to be presented in parallel with summary judgment briefing.[39] That conduct is sufficient to satisfy its obligation to defend under the Rules.

---

[34] *See U.S. Surgical Corp. v. Auhll*, 1998 WL 326493, at *1–2 (Del. Ch. May 28, 1998).

[35] *Id.*

[36] *Sundor Elec., Inc. v. E.J.T. Constr. Co.*, 337 A.2d 651, 652 (Del. 1975).

[37] D.I. 14 at 19–22.

[38] *Compare* D.I. 1 (the Complaint, filed September 24, 2025), *with* D.I. 10 (Defendant's motion to dismiss, filed exactly three weeks later on October 15, 2025).

[39] *See* D.I. 12.

In these circumstances, granting default judgment would be disproportionate. Therefore, Plaintiff's motion for default judgment is denied.

### 2.     Defendant's Motion to Dismiss

Defendant's motion to dismiss challenges Plaintiff's standing, ripeness, and ability to state a claim based on alleged noncompliance with contractual prerequisites to this suit.[40]   Specifically, Defendant seeks dismissal and argues, among other things, that Plaintiff has failed to meet the contractual preconditions under Article Eleventh.[41]

### A.     Delaware Law Permits Contractual Preconditions for Advancement

"[C]orporations may specify by bylaw or contract the terms and conditions upon which present and former corporate officials may receive advancement . . ."[42] "The advancement authority conferred by section 145(e) is permissive."[43] "Delaware law in general recognizes that the value of contracts is maximized by

---

[40] D.I. 15 at 12–24.

[41] *Id.*

[42] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 212 (Del. 2005) (citing *Gentile v. SinglePoint Fin., Inc.*, 788 A.2d 111 (Del. 2001)).

[43] *Id.*

enforcing them as written [and that] little value can come of a promise that can be avoided upon the remorse of the maker thereof."[44]

"The scope of an advancement proceeding is usually summary in nature and limited to determining the issue of entitlement in accordance with the corporation's own uniquely crafted advancement provisions."[45] The resolution of this tension turns on the specific language of the governing instrument and the circumstances in which the plaintiff seeks to invoke it.[46]

Taken together, these principles confirm that advancement rights, while informed by public policy, are fundamentally contractual and must be enforced under the terms of the governing instrument. The Court's role is, therefore, limited to determining whether Plaintiff has established a present entitlement to advancement under those terms. Accordingly, the analysis turns to the requirements

---

[44] *Unbound P'rs Ltd. P'ship v. Invoy Hldgs. Inc.*, 251 A.3d 1016, 1031–32 (Del. Super. Ct. 2021) (quoting *Lyons Ins. Agency, Inc. v. Wark*, 2020 WL 429114, at *1 (Del. Ch. Jan. 28, 2020)).

[45] *Homestore, Inc.*, 888 A.2d at 212 (first citing 8 *Del. C.* § 145(k); then citing *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, at 510 (Del. 2005); and then citing *Gentile v. SinglePoint Fin., Inc.*, 788 A.2d 111 (Del. 2001)).

[46] *See generally In re Genelux Corp.*, 2015 WL 6390232 (Del. Ch. Oct. 22, 2015) (analyzing the specific language of an indemnification agreement and whether the circumstances show that the plaintiff had made a proper demand and was involved in the action by reason of his corporate status).

of Article Eleventh, and, in particular, the procedural conditions governing the assertion of advancement rights.

### B. The Structure of Article Eleventh

Article Eleventh establishes a procedural framework governing claims for advancement.[47] Section 2(A) provides that advancement "shall be made" upon receipt of an undertaking, reflecting the statutory requirement under 8 *Del. C.* § 145(e) that a corporation may condition advancement on the recipient's agreement to repay if the recipient is found to not be entitled to indemnification.[48] Section 2(B), in turn, imposes a temporal limitation on litigation by requiring that a claimant wait twenty days after making a demand before initiating suit.[49] This provision essentially reflects the parties' agreement to defer litigation until the corporation has had a defined opportunity to evaluate the demand.

The parties' dispute centers on how these two provisions interact. Plaintiff contends that Section 2(A) governs only the timing of payment and does not affect the validity of a demand.[50] Under Plaintiff's reading, the twenty-day waiting period

---

[47] *See* D.I. 1, Ex. A, art. Eleventh.

[48] *See* 8 *Del. C.* § 145(e); *see also Homestore, Inc.*, 888 A.2d at 211–12; D.I. 1, Ex. A, art. Eleventh § 2(A).

[49] *See* D.I. 1, Ex. A, art. Eleventh § 2(B).

[50] D.I. 14 at 18–19; D.I. 20 at 1–2.

begins to run upon submission of a demand letter, regardless of whether an undertaking has been provided.[51] Furthermore, Plaintiff asserts that the signed undertaking is not required to accompany the demand, rather the signed undertaking is required only before a payment is made.[52] Defendant, by contrast, argues that a demand is not "valid" under Section 2(B) unless it includes an executed undertaking, because without such an undertaking the corporation has no obligation to advance expenses.[53]

The Court finds the Defendant's interpretation persuasive. This interpretation is consistent with Delaware law's directive that advancement provisions, as contractual rights, must be enforced according to their plain terms.[54] The better reading of Article Eleventh, when Sections 2(A) and 2(B) are considered together, is that a demand for advancement must include the materials necessary to trigger the

---

[51] D.I. 14 at 23–24;  D.I. 20 at 5.

[52] D.I. 14 at 18.

[53] *See* D.I. 1, Ex. A, art. Eleventh §§ 2(A)–(B); D.I. 8; D.I. 15 at 1–2, 7, 15–16.

[54] "Delaware law 'adheres to the objective theory of contracts,' which requires a court to interpret a particular contractual term to mean 'what a reasonable person in the position of the parties would have thought it meant.' Delaware courts interpret a contractual term that is reasonably or fairly susceptible to only one interpretation according to the term's plain meaning." *Blankenship v. Alpha Appalachia Holdings, Inc.*, 2015 WL 3408255, at *14 (Del. Ch. May 28, 2015) (first quoting *Salamone v. Gorman*, 106 A.3d 354, 367 (Del. 2014); then quoting *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992); and then citing *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010)), *judgment entered*, 2015 WL 3582352 (Del. Ch. June 5, 2015).

corporation's obligation to act. Because the corporation has no duty to advance expenses until it receives an undertaking, a demand unaccompanied by an undertaking is not a request that the corporation is contractually obligated to evaluate or satisfy.[55]

In that sense, the undertaking is not merely a condition precedent to payment; it is part of what renders the demand operative under the contractual scheme of the contracting parties. Thus, the twenty-day waiting period contemplated by Section 2(B) does not begin to run until both a demand and an undertaking have been submitted.[56] Absent those elements, the corporation has no obligation to act and no basis upon which to evaluate the request.

### C. Plaintiff's Failure to Submit an Undertaking Before Filing Suit is Not Excusable

It is undisputed that Plaintiff did not include an executed undertaking with the February 11, 2025 demand letter. Plaintiff initiated this action on September 25, 2025, and about two weeks later, submitted an undertaking.[57]

---

[55] D.I. 1 ¶ 28;  D.I. 15 at 7.

[56] *See* D.I. 1, Ex. A, art. Eleventh § 2(B);  D.I. 15 at 17–18.

[57] *See* D.I. 1 at 19 (The Complaint is dated September 24, 2025.);  *see* D.I. 9 (The undertaking was not submitted until October 14, 2025.).

Under the contractual framework described above, Plaintiff had not made a valid demand at the time he filed suit.[58] Accordingly, the contractual predicate for Defendant's performance was never satisfied. As a result, the twenty-day waiting period required by Section 2(B) had not been triggered, and Plaintiff's claims were premature. Since Plaintiff had not submitted an undertaking and had not triggered the contractual waiting period, he had no enforceable right to advancement at the time he filed the Complaint.

Plaintiff argues that Delaware's policy favoring advancement supports excusing strict compliance with the contractual requirements in this case.[59] Plaintiff relies on decisions such as *In re Genelux Corp.* and *Wong v. USES Holding Corp.* in which the Court declined to penalize plaintiffs for procedural deficiencies relating to undertakings.[60] Those authorities do not alter the analysis here. They instead

---

[58] D.I. 1, Ex. A, art. Eleventh §§ 2(A)–(B); D.I. 22 at 10; D.I. 15 at 16–17 (because Plaintiff failed to submit an executed undertaking, which under the governing instrument is a prerequisite to the corporation's obligation to advance expenses, and, as a consequence, failed to trigger the contractual twenty-day waiting period that must elapse before a claim for advancement may be brought).

[59] D.I. 14 at 19 (". . . Delaware law requires the Court to read the provision in favor of the party seeking advancement.").

[60] *See* D.I. 20 at 2–4; *see also Wong v. USES Hldg. Corp.*, 2016 WL 769043, at *2–3 (Del. Ch. Feb. 26, 2016); *see also In re Genelux Corp.*, 2015 WL 6390232, at *5 (Del. Ch. Oct. 22, 2015).

reflect narrow, context-specific departures from strict enforcement that are not present in this case.

In *Genelux,* the Court declined to dismiss an advancement action where the plaintiff failed to submit an undertaking before filing suit.[61] But that decision arose in a materially different context, as the action in *Genelux* was expedited and involved circumstances that justified prompt judicial intervention.[62] The Court's willingness to overlook the procedural defect was informed by those exigent conditions.[63]

No comparable considerations are present here. Plaintiff waited about seven months after submitting the demand letter before filing suit.[64] That delay undercuts any suggestion that strict enforcement of the contractual requirements would produce an inequitable result or frustrate the purpose of advancement. To the contrary, the record reflects that Plaintiff had the opportunity to comply with the contractual framework before initiating litigation.[65]

---

[61] *In re Genelux Corp.*, 2015 WL 6390232, at *5.

[62] *Id.*

[63] *Id.* ("I do not find Genelux's argument persuasive. Because this action relates to the somewhat expedited 205/225 Action and has been expedited itself, in part, I conclude that it would exalt form over substance to dismiss this action based on the fact that it was filed before Szalay submitted evidence of his expenses and a written undertaking.").

[64] *See* D.I. 1 ¶ 7 (Plaintiff sent his formal demand letter to Defendant on February 11, 2025, but did not file his Complaint until September 24, 2025.); D.I. 14 at 9.

[65] D.I. 22 at 2 ("At any point in the seven months between sending the February Letter and filing the Complaint, Plaintiff could have executed and submitted an undertaking.

The *Wong* case also does not compel a different outcome. The Court in *Wong* held that "[u]ntil Plaintiffs perfected their requests for advancement by providing the undertakings, they had no right to advancement or to fees on fees because USES had no obligation to advance any amount to Plaintiffs."[66]

First, *Wong* does not resolve the threshold issue presented here. In that case, the parties stipulated to the plaintiffs' entitlement to advancement, and the Court therefore did not confront whether the plaintiffs had satisfied the contractual prerequisites necessary to establish such entitlement.[67] Instead, the Court's analysis assumed that advancement was warranted and focused on implementing that right and establishing a procedure for resolving disputes over the requested fees.[68] Accordingly, *Wong* offers limited guidance where, as here, the dispositive question is whether Plaintiff has established a present entitlement to advancement under the governing instruments.

---

Inexplicably, he elected not to, instead filing an unsigned form undertaking with the Complaint.") (emphasis omitted).

[66] *Wong v. USES Hldg. Corp.*, 2016 WL 769043, at *1 (Del. Ch. Feb. 26, 2016).

[67] *See id.* ("Counsel have submitted a stipulated form of order that resolves most of the otherwise open issues, including entitlement to advancement . . . ").

[68] *See id.* ("The first issue involves 'fees on fees'; the second issue involves allocation of the Special Master's costs.").

*Wong* emphasizes that advancement—and any ancillary right to fees-on-fees—depends on compliance with the contractual conditions that give rise to that entitlement.[69]  The Court there made clear that a corporation has no obligation to advance litigation expenses until the indemnitee has properly demonstrated a right to advancement, including by satisfying any undertaking requirement.[70]  Until those conditions are met, the indemnitee has neither a right to advancement nor a basis to recover fees incurred in pursuing that relief.[71]

Taken together, *Wong* does not support excusing Plaintiff's noncompliance. Rather, it reinforces that contractual prerequisites define when an advancement right arises.  As such, Plaintiff's delay further undermines any claim of urgency or inequity that might justify excusing compliance.  For these reasons, the Court declines to invoke Delaware's pro-advancement policy to override the contractual requirements set forth in Article Eleventh of the governing documents, and grants Defendant's motion to dismiss.

---

[69]  *Id.*

[70]  *Id*.

[71]  *Id.*

### 3.    Plaintiff's Motion for Summary Judgment

Plaintiff also moves for summary judgment on his advancement claims.  "As in most advancement disputes, summary judgment practice is an efficient and appropriate method to decide this case, as the relevant question turns on the application of the terms of the corporate instruments setting forth the purported right to advancement and the pleadings in the proceedings for which advancement is sought."[72]

The Court has concluded that the Complaint must be dismissed because Plaintiff failed to comply with the contractual prerequisites to bringing suit under Article Eleventh.[73]  In particular, Plaintiff did not submit an executed undertaking and did not trigger the contractual waiting period before initiating this action.[74]

Because those deficiencies are dispositive, the Court does not reach the merits of Plaintiff's claimed entitlement to advancement.  Summary judgment presupposes the existence of a properly asserted and justiciable claim.  Where, as here, the

---

[72] *Weinstock v. Lazard Debt Recovery GP, LLC*, 2003 WL 21843254, at *2 (Del. Ch. Aug. 8, 2003).

[73] D.I. 1, Ex. A, art. Eleventh §§ 2(A)–(B);  D.I. 15 at 17.

[74] *See* D.I. 1 at 19 (Plaintiff filed his Complaint on September 24, 2025);  *see generally* D.I. 9 (Plaintiff did not submit the signed undertaking until October 14, 2025).

underlying claim is premature and subject to dismissal, so there is no basis on which to grant summary judgment. Accordingly, Plaintiff's motion for summary judgment is denied. Additionally, because Plaintiff has not succeeded on the merits of his advancement claims here, his request for attorneys' fees incurred in prosecuting this action is denied. [75]

## III. CONCLUSION

For the reasons above, Defendant's motion to dismiss is **GRANTED** and advancement is **DENIED** without prejudice. Plaintiff failed to comply with the contractual prerequisites governing advancement under Article Eleventh, including the requirement to submit an executed undertaking and to observe the contractual waiting period before initiating suit. Because those deficiencies render Plaintiff's claims premature, the Complaint cannot proceed.

In light of that disposition, Plaintiff's motion for summary judgment is **DENIED** as moot, and Plaintiff's motion for default judgment is **DENIED** because Defendant appeared and defended this action by filing a motion to dismiss. Plaintiff's request for fees-on-fees is also **DENIED**, as Plaintiff has not succeeded on the merits of his advancement claims.

---

[75] D.I. 1 ¶¶ 65–71.

Judgment shall be entered in favor of the Defendant unless expedited exceptions are timely filed under Court of Chancery Rule 144.

Respectfully submitted,

*/s/ Loren Mitchell*

Magistrate in Chancery